[No. 1343.]

THE STATE OF NEVADA, Respondent, *v.* CHARLEY LUNG, Appellant.

Criminal Law—Rape—Constructive Force.—In the crime of rape, the force necessary to complete the offense may be constructive. Such constructive force exists where sexual intercourse is had with a woman who is unconscious or mentally unable to fairly comprehend the nature and consequences of the sexual act.

Vol. XXI—27

---

Argument for Appellant.

---

IDEM—CONSENT INDUCED BY FRAUD —When the woman's consent to the sexual act is induced by fraud it is not rape.

IDEM—ATTEMPT TO COMMIT RAPE BY CONSTRUCTIVE FORCE—ELEMENTS OF SUCH CRIME.—To constitute the crime of attempt to commit rape by the use of constructive force, the defendant must have intended to either destroy the woman's power of resistance by the administration of liquors or drugs, or else to take advantage of the fact that she was already in a condition in which either the mental or physical ability to resist is wanting.

IDEM—CHARACTER OF AN ACT TO CONSTITUTE AN ATTEMPT TO COMMIT A CRIME.—An act to constitute an attempt must go further than mere preparation. It must be a direct movement towards the commission of the offense after the preparation is made and must be adequate to its commission.

IDEM—ACT, WHEN INSUFFICIENT TO CONSTITUTE AN ATTEMPT TO COMMIT RAPE.—The attempted administration of cantharides to a woman for the purpose of having sexual intercourse with her, but without any offer or effort at sexual connection, is mere preparation, is not an act adequate to the commission of the crime, and does constitute an attempt to commit a rape upon her.

IDEM—ARGUMENTATIVE CHARGES IN INDICTMENT.—A charge in an indictment that the defendant attempted to commit a crime only argumentatively charges that he intended to commit it, and is sufficient. (Syllabus by Bigelow, J.)

APPEAL from the District Court of the state of Nevada, Humboldt county.

*A. E. Cheney*, District Judge.

The facts sufficiently appear in the opinion.

*M. S. Bonnifield*, for Appellant.

I.   In an indictment for an attempt to commit a crime it is essential to aver that the defendant did some act which directed by a particular intent, to be averred, would have apparently resulted in the ordinary and likely course of things in a particular crime. (Wharton's Crim. Law, 9th Ed., Vol. 1, p. 192.)

II.   The indictment does not charge that the alleged mingling and mixing of a certain quantity of cantharides with certain coffee was done with intent to ravish or carnally know the complainant, forcibly and against her will. The essence of a criminal offense is the wrongful intent, without which it can not exist. (*State* v. *Gardner*, 5 Nev. 378.) The crime must be directly and positively charged. (*People* v. *Logan*, 1 Nev. 110.)

III.   In attempts the intent must be specific to do some act

which, if it were fully performed, would constitute a substantive crime. (1 Bishop Crim. Law, 6th Ed. 731.) An attempt is committed only when there is a specific intent to do a particular crime. It can not be founded on general malevolence.

IV. In attempts the evil intent and the act must be simultaneous. There is no allegation in the indictment of intent to ravish or carnally know connected with the act of mixing the cantharides with the coffee, or otherwise. (1 Bishop Crim. Law, 771.)

V. No court can say that the act alleged in the indictment would have even " apparently resulted in the crime of rape in the ordinary and likely course of events, but for collateral intervention." The indictment is fatally defective in the view of those authorities which hold most strongly against the accused in cases of attempt. The act charged is not apparently adapted to result in the crime of rape.

VI. There is a wide difference between the preparation for an attempt to commit a crime and the attempt itself. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense. The attempt is the direct movement towards the commission of the offense after the preparations are made. The attempt contemplated by the statute must be manifested by an act or acts which would end in the consummation of the particular substantive offense, but for the intervention of circumstances independent of the will of the defendant. (*People* v. *Murray*, 14 Cal. 160.) If the first act be merely attempted, it will not constitute an offense. (*Commonwealth* v. *Gratton,* 3 Crim. Defenses 675.)

*James D. Torreyson,* Attorney General, and *E. L. Williams,* District Attorney of Humboldt county, for Respondent.

I. In crimes which require force as an element in their commission, there is no substantial difference between an assault with intent and an assault with attempt to perpetrate the offense. (*Johnson* v. *State,* 14 Ga. 59.) The word " attempt" signifies both the act and the intent with which the act is done. (*Cunningham* v. *State,* 49 Miss. 685, 701; *Bullock* v. *State,* 13 Ala. 416; *Hart* v. *State,* 38 Tex. 382.) It is sufficient if the means employed are apparently sufficient to accomplish the act intended. If the act was in the direction of the commission of

the offense, it is criminal, although insufficient to accomplish the purpose. (*People* v. *Lawton*, 56 Barb. 126; *Com.* v. *Jacobs,* 9 Allen (Mass.) 274; *Com.* v. *McDonald*, 5 Cush. 365.)

II.   The indictment taken as a whole alleges clearly that defendant attempted to commit the crime of rape by administering cantharides to the complaining witness, and that he was intercepted and prevented in the accomplishment.   The offense with which the defendant is charged is complete.   If the act when completed would have constituted the crime of rape, then the attempt is complete.

By the Court, BIGELOW, J.:

The defendant is charged with an attempt to commit rape. Rape is defined by our statute to be the carnal knowledge of a woman forcibly and against her will.   Force is a necessary ingredient in the commission of the offense, except where committed upon a child under the age of consent.   (*State* v. *Pickett,* 11 Nev. 255.)   The only qualification to this rule is that the force may be constructive.   (*Lewis* v. *State*, 30 Ala. 54.)   This constructive force has been held to exist where the defendant had violated the woman's person after she became insensible from intoxicating liquors given her by him, for the purpose of exciting her and then having sexual connection with her (*Queen* v. *Camplin*, 1 Cox, Crim. Cas. 220; 1 Car. & K. 746; 1 Denison, Crim. Cas. 89); where the woman was so drunk as to be insensible, although the liquor was not given her by the defendant (*Com.* v. *Burke*, 105 Mass. 376); where she was in such deep slumber as to be unconscious of the act (*Reg.* v. *Mayers*, 12 Cox, Crim. Cas. 311); and where her powers of resistance had been overcome by the administration of ether or chloroform. (2 Whart. & S. Med. Jur., 3d Ed. Sects. 245, 267.) In *McQuirk* v. *State*, 84 Ala. 435, it is said: "It is true that the element of force need not be actual, but may be constructive or implied.   If the woman is mentally unconscious from drink or sleep, or from other cause is in a state of stupefaction, so that the act of the unlawful carnal knowledge on the part of the man was committed without her conscious and voluntary permission, the idea of force is necessarily involved in the wrongful act itself—the act of penetration.   But even in cases of this kind the intent to use force, if necessary to accomplish the offense, is essential to criminality."

Whether intercourse with a non-resisting or consenting idiotic or insane woman is rape depends upon her capacity to understand the nature of the act (*People* v. *Cornwell*, 13 Mich. 433); or, as stated in *Reg.* v. *Barrett*, 12 Cox, Crim. Cas. 498, upon the possession by her of will-power with which to either consent or refuse. Fraud, as by personating the woman's husband (*Rex* v. *Jackson*, Russ. & R. 487; *State* v. *Brooks*, 76 N. C. 1), or where she consents to the act under the belief, fraudulently induced by the defendant, that it is necessary medical treatment (*Don Moran* v. *People*, 25 Mich. 356), does not supply the want of force. The sum of the cases seems to be that to constitute rape, where there is no force used, the woman must have been unconscious, or unable to fairly comprehend the nature and consequence of the sexual act. It must necessarily go this far, or else there is no distinction between rape, where the force used is constructive, and seduction. Anything which merely excites the woman's passions, leaving her at the same time in the full possession of her mental and physical powers, capable of comprehending the nature of the act, and of exercising her own volition in the matter, is classed rather among the arts of the seducer than the weapons of him who would destroy female virtue by force.

In *Queen* v. *Camplin*, *supra*, the prisoner had given the woman intoxicating liquors for the purpose of exciting her, and thereby inducing her to consent to his advances. Failing in this, she finally became insensible, and he then violated her person. This was held to be rape; but only because he had taken advantage of her unconscious condition. A careful study of the case shows that had he succeeded in inducing her to consent, although the consent was obtained through the liquors given her, it would not have been so held. In *People* v. *Royal*, 53 Cal. 62, the defendant had practiced manipulations upon a girl of sixteen, until she was, as she testified, so dull and stupid as to be unconscious of the nature of the act of sexual intercourse. This was held not to be rape.

As an attempt to commit a crime can only be made under circumstances which, had the attempt succeeded, would have constituted the entire substantive offense (1 Bish. Crim. Law, Secs. 731, 736; *State* v. *Brooks*, 76 N. C. 1), the result which we gather from these principles is, that for a man to be guilty of the crime of an attempt to commit rape, he must have

intended to use the force necessary to accomplish his purpose, notwithstanding the woman's resistance, or in the case of constructive force, to either destroy her power to resist him by the administration of liquors or drugs, or to take advantage of the fact that she was already in a condition in which either the mental or physical ability to resist is wanting.

In addition to this, there must have been some act done which, in connection with this intent, constitutes the attempt. There is a distinction, sometimes difficult to draw, between this act and mere acts of preparation, or acts which are not so closely connected with the substantive crime intended as to constitute an attempt. (1 Whart. Crim. Law, Sec. 180.) For instance, in *People* v. *Murray*, 14 Cal. 159, it was held that declarations of an intent to enter into an incestuous marriage, followed by elopement for the purpose and sending for a magistrate to solemnize the ceremony, were mere acts of preparation, and did not constitute an attempt to commit the crime. The court says: " Between preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement towards the commission, after the preparations are made." In *U. S.* v. *Stephens*, 8 Sawy. 116, the defendant had attempted to purchase liquors in San Francisco for the purpose of introducing them into Alaska. This was held mere preparation, and not an attempt to introduce them into Alaska. In *State* v. *Colvin*, 90 N. C. 717, it is said: "It is essential that the defendant should have done some acts intended, adapted, approximating, and in the ordinary and likely course of things, would result in the commission of the particular crime; and this must be averred in the indictment, and proved." In *Kelly* v. *Com.*, 1 Grant, Cas. 484, the defendant had been convicted of murder, charged to have been perpetrated in an attempt to commit rape. The defendant and others had unlawfully entered a house, in the night time, in which a woman of loose character lived, and in a fight which ensued the father of the woman was killed. In reversing the conviction the court held that entering a house with intent to commit a rape therein did not constitute an attempt to do so. That the attempt at rape had not yet been made. It is there said: " The court should have instructed the jury that acts are necessary to constitute an attempt, and that an attempt to commit

a rape is an ineffectual offer, by force, with intent to have. carnal connection." The overt act which constitutes an attempt must be one which manifests an intention to commit the crime. (*Cunningham* v. *State*, 49 Miss. 685.) A man's intentions must be judged by his acts. In attempts his act must have been one which, under all the circumstances, manifests an intention to commit that particular offense. (1 Whart. Crim Law, Sec. 176.) It is essential, too, that the act of endeavor should be intrinsically adapted to effect the purpose, and that the court and the accused may see that it is so adapted, it should be specifically stated in the indictment. (*State* v. *Wilson*, 30 Conn. 504.)

The specific act charged against the defendant in the indictment in the case at bar, is that of mixing cantharides in some coffee which he knew a certain woman was about to drink. There is no direct allegation that this was done with intent to commit rape. It is argued, however, that as it is alleged that it was done in an *attempt* to commit rape, and an attempt necessarily includes an intent to commit the crime, it follows that the intent is sufficiently stated. At the best, this is merely an argumentative statement of the fact, which is not permissible in an indictment. (*People* v. *Logan*, 1 Nev. 110.) Whether certain facts constitute an attempt to commit crime is not only a question of law, but one that is often intricate and difficult of solution. These facts must be stated in the indictment, so that the court may determine whether or not they constitute an offense. In *State* v. *Wilson*, in construing a similar indictment, the court uses this language: "If it be said that the words 'attempt to steal' imply it [the intent] sufficiently, the conclusive answer is that they equally imply an overt act of endeavor, for that is equally an element of an attempt; and if either element of the offense may be left to implication, both may be, and a general averment of an attempt to steal or to rob, or other attempt, would in such cases be sufficient." (30 Conn. 504.)

In *Randolph* v. *Com.*, 6 Serg. & R. 397, it is said: "This mode of charging a thing by way of argument, and not directly, will not do. To say that a man made an *attempt* is very uncertain language. We cannot pretend to say what it is that the defendant is charged with doing; and without knowing that, we cannot determine whether what he did was an indictable offense." For like rulings upon indictments for an assault

with intent to commit crime, see *State* v. *Ross*, 25 Mo. 426; *State* v. *Martin*, 3 Dev. 329; *People* v. *Marshall*, 14 Ala. 411.

The indictment is also insufficient in that it does not appear that the act was adequate, approximate and sufficient to constitute the offense of which he was convicted.

Cantharides, or Spanish fly, is classed with the irritant poisons, such as arsenic, the acids, corrosive sublimate, etc., and is capable of producing fatal results. The first symptoms are nausea, vertigo, and a burning sensation in the mouth and throat, followed sometimes by irritation in the genital organs. There is nothing about it in the nature of a narcotic or an anæsthetic. (2 Whart. & S. Med. Jur. Secs. 523, 524; Tayl. Pois. 576.) Except as an ·effect of the sickness produced, it leaves a person in the full possession of his faculties. It can produce no such condition of mind or body as we have seen is necessary to constitute the constructive force in rape. While the act was dastardly, and well deserves punishment, it cannot, as an attempt to commit rape, be distinguished, in principle, from that of giving the liquor in *Queen* v. *Camplin*, or the manipulation in *People* v. *Royal*. It was not adequate to bring about that state of affairs which, had he succeeded in having carnal intercourse with the woman, would have constituted rape. There was no offer or attempt to have connection with her, either by force or otherwise, nor is it logically inferable from the act that he then and there intended to violate her person. Possibly he intended to have connection with her subsequently, and believed that the operation of the drug would materially assist him in accomplishing his purpose, by inducing her to consent; but this, if successful, would fall far short of rape. So far the only attempt was to administer the cantharides. The attempt to rape, even if intended, had not yet begun.

Much that has been already said applies also to the evidence, which, in addition to that concerning the attempted administration of the cantharides, which she did not take, is simply that some time before he had said he would have carnal intercourse with her. There is still no logical connection between the act and the ultimate intent sought to be charged. It does not indicate that he then and there intended to carnally know her by force, or was then engaged in an attempt to so know her by first destroying her power to resist such an attempt. Whether if there was a drug which, while leaving a woman in the full

possession of all her other faculties, would create in her an uncontrollable sexual appetite, its administration by one who intended to have intercourse with her, while under its influence, would constitute an attempt to rape, need not be considered. Such a case has never arisen. Probably there is no such drug. At any rate, cantharides will not produce such a condition. While, from a knowledge that it will irritate the genital organs, and in ignorance of its dangerous properties, it has frequently been employed for the purpose of exciting the sexual propensities in females, in no case that we have found has it been held, or even suggested, that its administration constituted an attempt at rape. In *Reg.* v. *Hanson*, 2 Car. & K. 912, and *Queen* v. *Walkden*, 1 Cox, Crim. Cas. 282, its administration was held to be no offense; in *Reg.* v. *Button*, 8 Car. & P. 573, and *Com.* v. *Stratton*, 114 Mass. 303, to be an assault; and in *People* v. *Carmichael*, 5 Mich. 10, under a statute against the administration of poison with intent to injure another, to be a felony. In the latter case the defense was that the cantharides had been given for the purpose of exciting the woman's passions so that the defendant could the more easily persuade her to have sexual intercourse with him (which would constitute seduction, another statutory offense in Michigan), and not with intent to injure her. But the court held that as seduction would be one kind of injury, the mere fact that the drug had caused an injury different from that intended, was no defense. In California, where the statutory definition of rape has been considerably enlarged, it still only includes cases where resistance is prevented by the administration of intoxicating, narcotic or anæsthetic substances. Judgment reversed.